**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

US DOMINION, INC., *et al.,*

    Plaintiffs,

      v.

HERRING NETWORKS, INC., *et al.*,

    Defendants.

No. 1:21-cv-02130-CJN

Judge Carl J. Nichols

**DOMINION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, STAY,
OR TRANSFER**

## TABLE OF CONTENTS

I.    Introduction......................................................................................................................1

II.   Legal Standards................................................................................................................3

III.  Argument .........................................................................................................................4

      A.    *Colorado River* Abstention Does Not Authorize Dismissal or a Stay
            Here....................................................................................................................4

            1.    Federal abstention principles do not permit dismissal of actions
                  for damages...............................................................................................4

            2.    This action and the *Coomer* action are not parallel actions to
                  which *Colorado River* abstention applies................................................7

            3.    The Supreme Court's "exceptional case" test does not support
                  abstention here. ......................................................................................11

      B.    Transfer to the District of Colorado is Neither Permitted nor
            Warranted........................................................................................................17

            1.    Defendants have not shown this action could have been
                  brought in Colorado. ...............................................................................17

            2.    The private-interest factors weigh against transfer.................................19

            3.    The public-interest factors weigh against transfer...................................31

            4.    Neither the potential for inconsistent judgments nor the earlier
                  filing of the *Coomer* action supports transfer. ........................................35

      C.    OAN and the Herrings Are Subject to Personal Jurisdiction in This
            District.............................................................................................................37

            1.    D.C.'s long-arm statute confers jurisdiction over OAN and the
                  Herrings...................................................................................................37

                  a.    This Court has jurisdiction under D.C.'s long-arm
                        statute because OAN and the Herrings transacted
                        business in this District. .................................................................38

                  b.    Jurisdiction is proper because OAN and the Herrings
                        caused tortious injury in Washington, D.C. to Dominion
                        by acts within this District. ...........................................................43

         c.     Jurisdiction is proper because OAN and the Herrings
caused tortious injury in Washington, D.C. to Dominion
by acts outside this District, while engaging in a
persistent course of conduct in this District....................................44

     2.     Jurisdiction comports with the Due Process Clause .................................44

IV.    Conclusion ........................................................................................................45

## TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*1443 Chapin St., LP v. PNC Bank, Nat. Ass'n*,
  718 F. Supp. 2d 78 (D.D.C. 2010) .................................................................................14, 15

*Abbas v. Foreign Pol'y Grp., LLC*,
  783 F.3d 1328 (D.C. Cir. 2015) .......................................................................................16, 35

*Air Line Pilots Ass'n v. E. Air Lines*,
  672 F. Supp. 525 (D.D.C. 1987) ...........................................................................................20

*AMAF Intern. Corp. v. Ralston Purina Co.*,
  428 A.2d 849 (D.C. 1981) ......................................................................................................39

*Ambrosia Coal & Const. Co. v. Pages Morales*,
  368 F.3d 1320 (11th Cir. 2004) ...............................................................................................8

*Armco Steel Co., L.P. v. CSX Corp.*,
  790 F. Supp. 311 (D.D.C. 1991) ...........................................................................................29

*Bader v. Air Line Pilots Ass'n, Int'l*,
  63 F. Supp. 3d 29 (D.D.C. 2014) ...........................................................................................36

*Beall v. Edwards Lifesciences LLC*,
  310 F. Supp. 3d 97 (D.D.C. 2018) .........................................................................................26

*Bello v. Howard Univ.*,
  898 F. Supp. 2d 213 (D.D.C. 2012) .........................................................................................4

*Boland v. Fortis Const. Co., LLC*,
  796 F. Supp. 2d 80 (D.D.C. 2011) .........................................................................................31

*Cable News Network, Inc. v. Trump*,
  1:18-CV-02610 (TJK) (D.D.C.) ..............................................................................................24

*California Farm Bureau Federation v. Badgley*,
  2005 WL 1532718 (D.D.C. June 29, 2005) ...........................................................................36

*Citizen Advocates for Responsible Expansion, Inc. v. Dole*,
  561 F. Supp. 1238 (D.D.C. 1983) ..........................................................................................21

*Colorado River Water Conservation District v. U.S.*,
  424 U.S. 800 (1976) ...................................................................................................... *passim*

*Consumers Union v. Consumer Prod. Safety Comm'n*,
  590 F.2d 1209 (D.C. Cir. 1978), *rev'd on other grounds*, 445 U.S. 375 (1980) .......................7

*Crane v. N.Y. Zoological Soc.*,
  894 F.2d 454 (D.C. Cir. 1990) ..................................................................................4, 43

*Davis Aviation Specialties, Inc. v. Trace Engines, L.P.*,
  2009 WL 10675003 (E.D. Tenn. Dec. 29, 2009) ................................................................36

*Detroit Intern. Bridge Co. v. Gov't of Canada*,
  787 F. Supp. 2d 47 (D.D.C. 2011) ......................................................................................18

*Douglas v. Chariots for Hire*,
  918 F. Supp. 2d 24 (D.D.C. 2013) ........................................................................22, 29, 37

*Edge Inv., LLC v. D.C.*,
  927 F.3d 549 (D.C. Cir. 2019) .................................................................................. *passim*

*Edmond v. U.S. Postal Serv. Gen. Counsel*,
  949 F.2d 415 (D.C. Cir. 1991) ..............................................................................................4

*Feiwus v. Genpar, Inc.*,
  43 F. Supp. 2d 289 (E.D.N.Y. 1999) ....................................................................................6

*Fisher v. Bander*,
  519 A.2d 162 (D.C. 1986) ...................................................................................................45

*Forest Cnty. Potawatomi Cmty. v. United States*,
  169 F. Supp. 3d 114 (D.D.C. 2016) ..............................................................................17, 19

*Foster-el v. Beretta U.S.A. Corp.*,
  163 F. Supp. 2d 67 (D.D.C. 2001) ......................................................................................12

*Fru-Con Const. Corp. v. Controlled Air, Inc.*,
  574 F.3d 527 (8th Cir. 2009) ................................................................................................8

*Goldhammer v. Dunkin' Donuts, Inc.*,
  59 F. Supp. 2d 248 (D. Mass. 1999) .....................................................................................5

*Greater Yellowstone Coal. v. Bosworth*,
  180 F. Supp. 2d 124 (D.D.C. 2001) ..............................................................................19, 20, 25

*Groesbeck v. Bumbo Intern. Trust*,
  2013 WL 3157922 (S.D. Tex. June 20, 2013) ....................................................................19

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) ..........................................................................................37

*U.S. v. H & R Block, Inc.*,
  789 F. Supp. 2d 74 (D.D.C. 2011) ......................................................................................33

*Hoai v. Sun Refining & Mktg. Co.*,
  866 F.2d 1515 (D.C. Cir. 1989) .......................................................................................14, 17

*Hoffman v. Blaski*,
  363 U.S. 335 (1960) .....................................................................................................3, 18, 19

*Holder v. Haarmann & Reimer Corp.*,
  779 A.2d 264 (D.C. 2001) .......................................................................................................38

*Holland v. A.T. Massey Coal*,
  360 F. Supp. 2d 72 (D.D.C. 2004) ..........................................................................................36

*Howard Acquisitions LLC v. Giannasca New Orleans LLC*,
  2009 WL 10684988 (E.D. La. Oct. 7, 2009) ...........................................................................36

*Howser v. Pearson*,
  95 F. Supp. 936 (D.D.C. 1951) ...............................................................................................43

*IMAPizza, LLC v. At Pizza Ltd.*,
  334 F. Supp. 3d 95 (D.D.C. 2018) ...............................................................................38, 41, 45

*Jackson-Platts v. Gen. Elec. Capital Corp.*,
  727 F.3d 1127 (11th Cir. 2013) .................................................................................................8

*Jefferson-11th St., LLC v. D.C.*,
  1:19-CV-01416, 2020 WL 3035038 (D.D.C. June 5, 2020) ......................................................5

*Johns v. Rozet*,
  770 F. Supp. 11 (D.D.C. 1991) ..................................................................................................8

*Jumpit, AS v. Why ASAP, LLC*,
  04-CV-1079 (PLF), 2005 WL 607914 (D.D.C. Mar. 16, 2005) ...............................................18

*Lans v. Adduci Mastriani & Schaumberg L.L.P.*,
  786 F. Supp. 2d 240 (D.D.C. 2011) .........................................................................................45

*Lapointe v. Van Note*,
  No. 03-cv-2128, 2004 WL 3609346 (D.D.C. Nov. 9, 2004) ....................................................43

*Laws. Title Ins. Corp. v. Merit Title Co., LLC*,
  549 F. Supp. 2d 90 (D.D.C. 2008) .............................................................................................8

*Lewy S. Poverty L. Ctr., Inc.*, 723 F. Supp. 2d 116, 123 (D.D.C. 2010) ......................................44

*Mahoney v. Eli Lilly & Co.*,
  545 F. Supp. 2d 123 (D.D.C. 2008) ...................................................................................25, 29

*Malveaux v. Christian Bros. Servs.*,
  753 F. Supp. 2d 35 (D.D.C. 2010) ...........................................................................................22

*Estate of Manook v. Research Triangle Inst., Int'l & Unity Res. Group, L.L.C.*,
    693 F. Supp. 2d 4 (D.D.C. 2010) .................................................................................45

*Marsh v. Hollander*,
    339 F. Supp. 2d 1 (D.D.C. 2004) .................................................................................41

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................................ *passim*

*Moses v. Dodaro*,
    No. 06-CV-1712, 2009 WL 10695551 (D.D.C. Feb. 6, 2009) ....................................4

*Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) ......................................................4

*Nat'l Ass'n of Home Builders v. U.S. E.P.A.*,
    675 F. Supp. 2d 173 (D.D.C. 2009) .......................................................................20, 22

*Nat'l Cmty. Reinv. Coal. v. NovaStar Fin., Inc.*,
    604 F. Supp. 2d 26 (D.D.C. 2009) ..............................................................................41

*Nat'l R.R. Passenger Corp. v. R & R Visual, Inc.*,
    No. 05–822, 2007 WL 2071652 (D.D.C. July 19, 2007)............................................29

*Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A.*,
    2011 WL 3329087 (D.N.J. Aug. 2, 2011) ..............................................................36, 37

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996)...........................................................................................2, 5, 6, 7

*Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*,
    567 F. Supp. 2d 96 (D.D.C. 2008) ...............................................................................38

*Robinson v. Eli Lilly & Co.*,
    535 F. Supp. 2d 49 (D.D.C. 2008) ...............................................................................34

*Saddler v. AMEC Foster Wheeler Env't & Infrastructure, Inc.*,
    253 F. Supp. 3d 210 (D.D.C. 2017) ..........................................................................8, 15

*Settles v. U.S. Parole Comm'n*,
    429 F.3d 1098 (D.C. Cir. 2005)......................................................................................4

*Sheehan v. Koonz*,
    102 F. Supp. 2d 1 (D.D.C. 1999) ...................................................................................6

*Sheffer v. Novartis Pharm. Corp.*,
    873 F. Supp. 2d 371 (D.D.C. 2012) .......................................................................... *passim*

*Shoppers Food Warehouse v. Moreno*,
    746 A.2d 320 (D.C. 2000) ............................................................................................38

vi

*Slate v. Am. Broad. Cos., Inc.*,
  12 F. Supp. 3d 30 (D.D.C. 2013) ................................................................................4

*Steinberg v. Int'l Crim. Police Org.*,
  672 F.2d 927 (D.C. Cir. 1981) ..................................................................................44

*Stewart v. Azar*,
  308 F. Supp. 3d 239 (D.D.C. 2018) ..........................................................................32

*Taguinod v. Key Handling Sys.*,
  Inc., 98-CV-6309 (TPG), 1999 WL 105029, at *2 (S.D.N.Y. Mar. 2, 1999) ...........5

*Thayer/Patricof Education Funding v. Pryor Resources Inc.*,
  196 F. Supp. 2d 21 (D.D.C. 2002) ................................................................21, 26, 29

*Tice v. Pro Football, Inc.*,
  812 F. Supp. 255 (D.D.C. 1993) ...............................................................................36

*Trout Unlimited v. United States Dep't of Agriculture*,
  944 F. Supp. 13 (D.D.C. 1996) ..................................................................................21

*Tyrer v. City of S. Beloit, Ill.*,
  456 F.3d 744 (7th Cir. 2006) .......................................................................................8

*Urquhart-Bradley v. Mobley*,
  964 F.3d 36 (D.C. Cir. 2020) .....................................................................................42

*US Dominion, Inc. v. Giuliani*,
  1:21-cv-00213-CJN (filed Jan. 25, 2021) ..................................................................21

*US Dominion, Inc. v. My Pillow, Inc.*,
  1:21-cv-00445-CJN (filed Feb. 22, 2021) ..................................................................21

*US Dominion, Inc. v. Powell*,
  1:21-cv-00040-CJN (filed Jan. 8, 2021) ....................................................................21

*US Dominion, Inc. v. Powell*,
  2021 WL 3550974 (Aug. 11, 2021) ..................................................................... *passim*

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ....................................................................................................34

*vonRosenberg v. Lawrence*,
  849 F.3d 163 (4th Cir. 2017) .......................................................................................8

*U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*,
  771 F. Supp. 2d 42 (D.D.C. 2011) ...................................................................9, 30, 36

*Wiggins v. Equifax Inc.*,
    853 F. Supp. 500 (D.D.C. 1994) ...........................................................................................42

*Wilderness Soc'y v. Babbitt*,
    104 F. Supp. 2d 10 (D.D.C. 2000) ...................................................................................21, 32

*Wilson v. Wilson*,
    785 A.2d 647 (D.C. 2001) ...................................................................................................38

*Wolken v. Lufkin*,
    1995 WL 704773 (N.D. Ill. Nov. 28, 1995) ......................................................................9, 10

*Wu v. Stomber*,
    750 F.3d 944 (D.C. Cir. 2014) ............................................................................................34

*Zichichi v. Jefferson Ambulatory Surgery Ctr., LLC*,
    2007 WL 3353304 (E.D. La. Nov. 7, 2007) ........................................................................10

**Statutes**

35 U.S.C. § 1404(a) ................................................................................................ *passim*

D.C. Code § 13-423(a) ............................................................................................ *passim*

D.C. Code § 13-334 ...............................................................................................................39

**Other Authorities**

Admin. Office of the U.S. Courts, *Explanation of Selected Terms*,
    https://www.uscourts.gov/sites/default/files/explanation-of-selected-terms-
    september-2014_0.pdf ............................................................................................................33

Fed. R. Civ. P. 4(k)(1)(A) ......................................................................................................37

Fed. R. Civ. P. Rule 12(b)(1) ..................................................................................................3

Fed. R. Civ. P. Rule 12(b)(2) ..................................................................................................4

Fed. R. Civ. P. Rule 12(b)(6) ..................................................................................................1

Fed. R. Civ. P. 201 .................................................................................................................4

Restatement (Second) of Torts § 577, cmt. .............................................................................41

## I.  INTRODUCTION

In its Complaint, Dominion recounts the many outrageous lies about Dominion that Defendants Herring Networks ("OAN"), Chanel Rion, Christina Bobb, and Charles and Robert Herring published, caused to be published, and promoted, ultimately alleging 25 different defamatory statements. The Complaint explains OAN's profit motive for spreading and endorsing these lies: its "race to the bottom" with competitors Fox and Newsmax, in a "quest for profits and viewers." Compl. ¶2. It describes how Defendants created a unique branding campaign for their Dominion lies, as well as the many ways in which Defendants manufactured false "facts" to support the false Dominion narrative they were broadcasting and promoting, including by funding the sham "audit" in Maricopa County, Arizona. *Id*. ¶¶9, 230–31. And it catalogs in great detail the mountain of publicly-available evidence—including from an OAN whistleblower—showing that Defendants knew they were spreading lies about Dominion, or at the very least recklessly disregarded the truth. *See, e.g*., *id*. ¶¶10, 107, 111, 116, 118, 122–24, 251–255, 320–21.

Unlike Sidney Powell, or Mike Lindell and MyPillow, or Patrick Byrne, the OAN Defendants do not try to challenge Dominion's defamation allegations against them through a Rule 12(b)(6) motion. That is wise in light of Dominion's well-pled complaint, but the procedural arguments Defendants make instead have no more merit than a 12(b)(6) motion would have had.

Instead of focusing on Dominion's allegations, Defendants devote nearly a third of their brief to recounting largely irrelevant factual and procedural history from a pending Colorado state court action filed by former Dominion employee Dr. Eric Coomer (the "*Coomer* action"), and to making extraneous attacks on Dominion unrelated to any legal point they try to make in their Motion. In doing so, Defendants vastly overstate the overlap between this case and the *Coomer* action. One would think, in reading Defendants' brief, that Dominion's Complaint revolves

1

entirely around statements by right-wing activist Joseph Oltmann that implicate Coomer. That is not remotely the case. The statements by Oltmann that are at issue in the *Coomer* action feature in just *one* of the twenty-five sub-paragraphs detailing Defendants' defamatory statements about Dominion. *See* Mot. at 8–9 (citing Compl. ¶305(f)). Out of the 311 paragraphs in Dominion's Complaint, Coomer is mentioned in just five paragraphs. *See* Compl. ¶¶121, 135, 256, 305(d) & (f). Oltmann appears in only eight paragraphs. *Id*. ¶¶37, 135, 171, 173, 189, 190, 305(d) & (f). Defendants nevertheless grasp at the *Coomer* action as their lifeline for getting out of this District and into their preferred forum in Colorado. Their arguments, however, range from entirely unsupported to squarely foreclosed. This Court should deny their motion entirely.

The Supreme Court has directly barred Defendants' lead argument, which asks this Court to "dismiss this case in its entirety based on abstention" under *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800 (1976). Mot. at 10. The Supreme Court held in *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719 (1996), that the federal abstention doctrines do not permit dismissal of suits for damages, and this is a suit seeking damages for Defendants' defamatory broadcasts. Subsequent courts—including this one—have acknowledged and applied the rule set forth in *Quackenbush*. Defendants' headline argument is dead on arrival.

Even ignoring the *Quackenbush* rule, Defendants' abstention argument is meritless. Defendants seek *Colorado River* abstention based on a pending state court case—the *Coomer* action—involving *different* parties, *different* issues, and *different* injuries. *Colorado River* abstention does not apply in these circumstances, particularly where resolution of the state action cannot provide "complete and prompt resolution of the issues between the parties" in the federal case. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). Most of the defamatory statements Dominion alleges are not even at issue in the *Coomer* action; abstention

2

would thus result only in delaying adjudication in this Court. And even if the *Coomer* action was a "parallel action," Defendants fail to demonstrate that "exceptional circumstances" support this Court surrendering its "virtually unflagging obligation" to exercise its jurisdiction.

Defendants' next argument, requesting transfer to the District of Colorado pursuant to 35 U.S.C. § 1404(a), seeks relief that this Court cannot provide. That statute authorizes transfer only to a forum in which an action could have been originally filed. A defendant seeking transfer cannot meet this requirement by waiving objections to personal jurisdiction; the defendant must show that the transferee court would have had jurisdiction over them in the first instance. *See, e.g.*, *Hoffman v. Blaski*, 363 U.S. 335, 342–44 (1960). Defendants make no effort to show that the Colorado court could have exercised personal jurisdiction over them absent their affirmative waiver of objections, and that failure is fatal to their transfer argument. Furthermore, the factors relevant to the transfer analysis provide no basis for transferring this action to Colorado, where none of the Defendants work or reside and where Dominion does not allege Defendants took any actions beyond the delivery of the nationwide defamatory broadcasts.

Defendants' make one final argument seeking to have this Court dismiss this case as to OAN and Robert and Charles Herring for lack of personal jurisdiction. Given these Defendants' extensive contacts in this District, including conducting business and maintaining OAN's D.C. bureau, that request should likewise be swiftly denied.

Defendants' motion to dismiss, stay, or transfer fails across the board to establish entitlement to the relief Defendants seek. The Court should deny their motion in full.

## II.   LEGAL STANDARDS

When deciding a Rule 12(b)(1) motion to dismiss, the Court may consider materials outside

the pleadings "to assure itself of its own subject matter jurisdiction,"[1] and must construe the complaint liberally to afford all possible inferences favorable to the pleader on allegations of fact. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106–08 (D.C. Cir. 2005) (citation omitted).

When responding to motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff must make a "prima facie" showing of personal jurisdiction. *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991). "[T]o establish a prima facie case, plaintiffs are not limited to evidence that meets the standards of admissibility required by the district court. Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). Courts resolve all factual discrepancies in the record in favor of the plaintiff. *See Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990).

## III.   ARGUMENT

### A.   *Colorado River* Abstention Does Not Authorize Dismissal or a Stay Here.

#### 1.   Federal abstention principles do not permit dismissal of actions for damages.

The Supreme Court has squarely held that "federal courts have the power to dismiss or remand cases based on abstention principles *only* where the relief being sought is equitable or

---

[1] Rather than submitting a declaration attaching evidence for the Court to consider in deciding their jurisdictional arguments, Defendants request judicial notice of numerous (often irrelevant) exhibits, most of which are subject to reasonable dispute. The Court should decline to take judicial notice of their Exhibits A–P. *See, e.g.*, *Slate v. Am. Broad. Cos., Inc.*, 12 F. Supp. 3d 30, 44–45 (D.D.C. 2013) ("[M]atters to be noticed must be relevant."); *Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 223 n.5 (D.D.C. 2012) (declining to judicially notice witness testimony for its truth); *Moses v. Dodaro*, No. 06-CV-1712, 2009 WL 10695551, at *1 (D.D.C. Feb. 6, 2009) (declining to notice facts in "affidavits, notices and administrative complaints"). In particular, with respect to Exhibit B, Defendants submit the full briefing for their Colorado anti-SLAPP motion. Any attempt to incorporate a wholly different brief into their motion through judicial notice falls far outside the bounds of Fed. R. Civ. P. 201 and would introduce a bevy of irrelevant arguments not otherwise raised in Defendants' motion.

otherwise discretionary," not in "a damages action." *Quackenbush*, 517 U.S. at 731 (emphasis added). The case before the *Quackenbush* Court involved *Burford* abstention, but as this Court has noted, the *Quackenbush* Court did not limit either its analysis or its holding to a particular form of abstention. *See Jefferson-11th St., LLC v. D.C.*, 1:19-CV-01416 (CJN), 2020 WL 3035038, at *4 (D.D.C. June 5, 2020) (Nichols, J.) (rejecting attempt to distinguish *Quackenbush*'s application to different form of abstention "in light of *Quackenbush*'s references to the Court's general 'abstention principles.'"). Rather, the *Quackenbush* Court cited to *Colorado River* and other federal abstention cases as demonstrating "the common-law background against which the statutes conferring jurisdiction were enacted," and the fact that "it has long been established that a federal court has the authority to decline to exercise its jurisdiction when it 'is asked to employ its historic powers as a court of equity.'" *Quackenbush*, 517 U.S. at 717 (citation omitted). By contrast, the *Quackenbush* Court continued, "we have not previously addressed whether the principles underlying our abstention cases would support the remand or dismissal of a common-law action for damages." *Id*. at 719. The Court held that the motivating principles behind the Court's abstention doctrines **do not** permit dismissal or remand of actions for damages, *see id*. at 731.

Defendants' request for abstention under *Colorado River* falls squarely within this holding. *See Jefferson-11th St., LLC*, 2020 WL 3035038, at *5 (staying damages claim in light of *Quackenbush* rather than dismissing); *Taguinod v. Key Handling Sys*., Inc., 98-CV-6309 (TPG), 1999 WL 105029, at *2 (S.D.N.Y. Mar. 2, 1999) (denying motion for *Colorado River* abstention on the basis that under *Quackenbush*, "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief sought is equitable or discretionary, but may not do so in common law actions for damages"); *see also Goldhammer v. Dunkin' Donuts, Inc*., 59 F. Supp. 2d 248, 252 (D. Mass. 1999) ("In the abstention context involving parallel state

5

proceedings, federal courts have power to dismiss or remand cases only where relief being sought is equitable or otherwise discretionary, but they may not do so in common law actions for damages."); *Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 290 (E.D.N.Y. 1999) (a court applying abstention principles "may not relinquish jurisdiction over common law claims for damages.").

Defendants' requested relief to "dismiss this case in its entirety based on abstention," Mot. at 10, is not permitted. Defendants cite no case to the contrary. In *Sheehan v. Koonz*, 102 F. Supp. 2d 1 (D.D.C. 1999), the parties did not brief, and the court did not address, whether dismissal based on federal abstention doctrines is permitted in actions for damages. And Defendants cite no other case in which a Court dismissed under *Colorado River*.

Defendants mischaracterize the relevant law by selectively quoting *Colorado River* out of context to argue that "'[w]ise judicial administration' calls for the 'dismissal of a federal suit due to the presence of a concurrent state proceeding.'" Mot. at 11 (quoting *Colorado River*, 424 U.S. at 818). In context, the statement does not stand for the proposition that the Defendants assert: *"*The circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are *considerably more limited* than the circumstances appropriate for abstention." 424 U.S. at 818 (emphasis added).

*Colorado River* instructs that the mere "presence of a concurrent state proceeding" is ***not*** typically a basis upon which a federal court may surrender its jurisdiction; "[a]s between state and federal courts, the rule is that the pendency of an action in the state court ***is no bar*** to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817 (emphasis added). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id*. at 813. The *Quackenbush* rule forecloses Defendants' request for dismissal based on *Colorado River*.

6

## 2. This action and the *Coomer* action are not parallel actions to which *Colorado River* abstention applies.

Even ignoring *Quackenbush*, an analysis of this action under *Colorado River* demonstrates that abstention in *any* form—whether dismissal or a stay—is inappropriate.

*Colorado River* abstention only applies when a "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28. The Supreme Court instructs that if any substantial doubt as to this exists, it would be a "serious abuse of discretion" to dismiss or stay under *Colorado River. Id.* "[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id.* Accordingly, courts typically consider, as a threshold matter, whether a federal and pending state court action are "parallel actions" to which abstention could apply. Here, this case and the *Coomer* action are not parallel actions—they involve *different* parties asserting *different* defamatory statements and alleging *different* injuries. *Colorado River* abstention thus cannot apply at all, regardless whether Defendants seek dismissal or a stay.

*First*, this action and the *Coomer* action involve different parties. Abstention under *Colorado River* requires that both actions involve the same or substantially the same parties. As the D.C. Circuit has explained, the *Colorado River* abstention doctrine rests on the principle of comity and exists "to assure judicial efficiency and to reflect abiding respect for other courts." *Consumers Union v. Consumer Prod. Safety Comm'n*, 590 F.2d 1209, 1219 (D.C. Cir. 1978), *rev'd on other grounds*, 445 U.S. 375 (1980). Yet, comity does not contemplate a court abstaining from exercising its jurisdiction over an action when a party before it is absent from the separate suit pending before another court. *Id*. (collecting Supreme Court and Circuit court cases). Put simply, there is no risk of conflicting judgments when cases involve different parties. Thus, courts in this

District have held that "the *Colorado River* doctrine of abstention requires that parallel litigation involve the same parties before both courts." *Laws. Title Ins. Corp. v. Merit Title Co., LLC*, 549 F. Supp. 2d 90, 92 (D.D.C. 2008); *see also Saddler v. AMEC Foster Wheeler Env't & Infrastructure, Inc.*, 253 F. Supp. 3d 210, 219–20 (D.D.C. 2017) (concluding that the absence of the sole federal defendant from a separate pending state court case "alone, provide[d] sufficient basis to deny AMEC's motion" for abstention); *Johns v. Rozet*, 770 F. Supp. 11, 15 (D.D.C. 1991) ("Because the parties and claims here are not coextensive with the Superior Court case, the Court does not find the case so parallel as to warrant abstention.").

Though the D.C. Circuit has not defined what renders cases parallel for the purpose of the *Colorado River* analysis, other Circuits, including the Third, Fourth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits require that parallel actions involve, at a minimum, substantially the same parties litigating substantially the same issues. *See, e.g., vonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017) (requiring "substantially the same parties" and stating "***[i]t is not enough*** for parties in the state and federal actions ***to be merely aligned in interest***." (citation omitted, emphases added)); *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006); *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009) (applying even stronger standard requiring "a substantial likelihood that the state proceeding will ***fully dispose of the claims*** presented in the federal court" (emphasis added)); *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013); *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330 n.21 (11th Cir. 2004) (collecting cases).

This action and the *Coomer* action do not involve "substantially the same," parties. ***None*** of the plaintiffs in the two actions overlaps. Three Dominion entities brought this action, whereas the *Coomer* action was filed by Dr. Eric Coomer. Defendants concede that Coomer—a former

8

Dominion employee—has no current affiliation with Dominion at all, let alone a connection so significant as to render him and Dominion "substantially the same party." *See* Mot. at 19 ("Dr. Coomer no longer works for Dominion and thus is outside of its control."). Likewise, the two actions do not share "substantially the same" defendants. Dominion has sued five defendants, only two of which (OAN and Rion) are among those named in the *Coomer* action. *See* Mot. at 6.

*Second*, the issues raised by the *Coomer* action are not substantially the same as the issues here. Defendants cite to only **one** defamatory publication in this case as implicating Coomer: OAN's broadcasts of an interview with Joe Oltmann, *see* Compl. ¶305(f), which Defendants break into three "statements," Mot. at 7. This leaves **24** defamatory statements alleged here by Dominion that are not at issue in the *Coomer* action. *See* Compl. ¶¶305(a)–(e), (g)–(y).

*Third*, this action and the *Coomer* action involve allegations of different injuries. The four additional defamatory statements raised in Defendants' motion as supposedly present in both actions are statements that Coomer argues are defamatory as to ***him***. Yet, whether Defendants' statements about Dominion defamed ***Coomer*** does not resolve the question of whether those statements defamed ***Dominion*** (and none of those four additional statements noted by Defendants overlaps with the 24 additional defamatory statements Dominion alleges in its Complaint ¶¶305(a)–(e), & (g)–(y)).

Defendants' cited cases do not help them. Defendants' leading case, *Wolken v. Lufkin,* 1995 WL 704773 (N.D. Ill. Nov. 28, 1995), does not support applying *Colorado River* abstention here. The *Wolken* court held that suits are parallel so as to make analysis under *Colorado River* appropriate "when substantially the same parties are contemporaneously litigating substantially the same issues in two different courts." *Id*. at *1. The *Wolken* court found that standard met where the pending state and federal cases shared the same single defendant accused of making the same

9

three defamatory statements, and where the plaintiff in the federal action (Wolken) was "***president and majority shareholder***" of the plaintiff corporation (AWM) in the state action. *Id*. (emphasis added). Defendants misleadingly modify quotes from *Wolken*, transforming "AWM and Wolken" into "[employee] and [employer]," to argue that the court granted abstention in light of shared interests between a company and its employee. Mot. at 12–13. Putting aside Defendants' own admission that Coomer and Dominion have no current affiliation, *Id*. at 19, the *Wolken* court granted abstention because, given Wolken's control of AWM, the parties in the two actions were substantially the same party, 1995 WL 704773, at *1.

Defendants' repeated citations to *Zichichi v. Jefferson Ambulatory Surgery Ctr., LLC*, 2007 WL 3353304 (E.D. La. Nov. 7, 2007), also do not support their case for abstention. There, a single state court plaintiff "sued the same defendants in federal court, alleging substantially the same allegations as those included in his state court petition." *Id.* at *1. Again, that is not the case here.

In addition, there is far more than "substantial doubt" that the *Coomer* litigation—which involves none of the plaintiffs here, only a subset of the present Defendants, and only one of the 25 defamatory statements alleged here—"will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28. *Colorado River* abstention "contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id.* Here, however, abstention will only delay adjudication of Dominion's claims in federal court. The vast majority of the defamatory statements raised here, by entirely separate plaintiffs, are not at issue in the *Coomer* action. Even as to the single defamatory statement at issue in both cases, Dominion cannot be bound by rulings in a proceeding where it is not a party. *Colorado River* abstention does not apply. *Id*.

10

### 3. The Supreme Court's "exceptional case" test does not support abstention here.

Even if this action were parallel to the *Coomer* action such that the *Colorado River* "exceptional circumstances" test applied (which it is not), assessing the relevant circumstances, "with the balance heavily weighted in favor of the exercise of jurisdiction" as the Supreme Court requires, demonstrates that abstention is not justified. *Moses H. Cone*, 460 U.S. at 16. The Supreme Court instructs that when conducting a *Colorado River* abstention analysis, a court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Id.* at 25–26 (emphasis in original); *see also Edge Inv., LLC v. D.C.*, 927 F.3d 549, 552 (D.C. Cir. 2019) ("All of the subsequent Supreme Court and D.C. Circuit cases addressing the *Colorado River* doctrine have stressed the unflagging obligation of the federal courts to exercise their jurisdiction, which only 'exceptional circumstances' can overcome."). In other words, only in truly unusual cases should a federal court decline to exercise jurisdiction based on a pending state case. *Moses H. Cone*, 460 U.S. at 16. Defendants fail to demonstrate such exceptional circumstances.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817, and "'*only the clearest of justifications will warrant*' deferral." *Edge Inv., LLC*, 927 F.3d at 553 (quoting *Moses H. Cone*, 460 U.S. at 16) (emphasis in original). Defendants quote the *Moses H. Cone* Court's "clear justification" language—without citation—to argue that the Court "'should not look for reasons' to keep this case." Mot. at 15. Defendants similarly provide no authority for the latter "quotation"; but their brief clearly implies that, according *Moses H. Cone*, a court should abdicate jurisdiction whenever a state court matter is pending and should not resist doing so by considering the circumstances that weigh against such

11

abdication. This gets the standard exactly backward. It is the ***surrender*** of jurisdiction that requires the "clearest of justifications," not retention of a case. *Moses H. Cone*, 460 U.S. at 16.

The relevant factors for determining whether "exceptional circumstances" support surrendering a federal court's jurisdiction in favor of a state court proceeding include: which court first assumed jurisdiction over the property at issue; the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; the order in which jurisdiction was obtained by the concurrent forums; whether federal or state law controls; and whether the state forum will adequately protect the interests of the parties. *Id*. at 15–16. However, as both the Supreme Court and this Circuit have recognized, "the decision to defer 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Edge Inv., LLC*, 927 F.3d at 553 (quoting *Moses H. Cone*, 460 U.S. at 16) (emphasis in original).[2]

As the D.C. Circuit explained in *Edge Investment*, the *Colorado River* analysis does not consist of merely counting up factors for one side or the other: "it is not enough that the factors favoring deferral outnumber those opposed (or neutral). Rather, the factors favoring deferral must ***themselves be exceptional***." 927 F.3d at 554 (emphasis added). Defendants fail to identify any exceptional factors here.

*Inconvenience of the federal forum*. The District of Columbia is the most convenient forum for this action; it certainly is not so inconvenient as to put this case in the narrow category of actions that warrant surrender of the Court's "virtually unflagging obligation" to exercise its

---

[2] Defendants cite to *Foster-el v. Beretta U.S.A. Corp*., 163 F. Supp. 2d 67 (D.D.C. 2001), which seems to take a simple factor-tallying approach. *See id*. at 74. However, *Foster-el* was decided long before the D.C. Circuit's clarification in *Edge Investments* that applying the Supreme Court's "exceptional circumstances" test is not merely a counting exercise. *See* 927 F.3d at 553.

12

jurisdiction. Two of the Defendants (Rion and Bobb) reside in this District. Compl. ¶¶17. A third defendant, OAN, maintains one of its two bureaus in this District, through which it produced the defamatory statements alleged here. *Id*. Moreover, OAN has previously voluntarily litigated in this District. *See, e.g.,* Ex. 1[3] (OAN motion for leave filed in D.C. litigation). Another voting technology company, Smartmatic, has recently sued OAN in this District such that it will likely have to appear and litigate here regardless of this case. *See* Ex. 2. And the two remaining defendants, Charles and Robert Herring, regularly conduct business in this District—overseeing, managing, and exercising control over OAN's D.C. bureau and the content it broadcasts. *Id.* ¶¶18–20; *see* Ex. 3 at ¶9 (C. Herring declaration describing business meeting in Washington, D.C.).

By contrast, none of the Defendants has any connection to Colorado, and while Rion and OAN are defendants in the *Coomer* action, both have far more substantial ties to this District (residency and a business office, respectively). And Dominion has agreed to litigate in this District by filing here and has thus waived any concerns about the forum. *See Sheffer v. Novartis Pharm. Corp*., 873 F. Supp. 2d 371, 377 (D.D.C. 2012). As explained, *infra,* Part B.2, this District is the more convenient forum for the parties and the vast majority of the relevant non-party witnesses.

Defendants are unable to identify any exceptional circumstance regarding the inconvenience of the forum that would support abstention. Even Oltmann, the one relevant non-party party witness identified in Dominion's Complaint with ties to Colorado, routinely traveled to this District to perpetuate lies about Dominion and its role in the 2020 election. Compl. ¶189. This does not present an exceptional circumstance regarding the "inconvenience" of the federal forum that supports *Colorado River* abstention, given that two Defendants reside in this District and all Defendants conduct business here.

---

[3] Exhibits are attached to the declaration filed in support of this brief, unless otherwise specified.

*The likelihood of piecemeal litigation*.  Defendants argue that "litigating the same questions in two different jurisdictions will ensure piecemeal litigation and could lead to inconsistent results." Mot. at 13. This argument is based on a false factual premise that this case and the *Coomer* action are "litigating the same questions," *id*., and on a false legal premise that rulings in the *Coomer* action, to which Dominion is not a party, will somehow bind Dominion.

But even putting aside these false premises, the "mere risk of duplicating efforts and different results is not what the Supreme Court meant by piecemeal litigation" that would support abstention. *Edge Inv., LLC*, 927 F.3d at 555. In *Colorado River*, the court stayed a federal suit "against some 1,000 nonfederal water users" in deference to a "state-court proceeding for the comprehensive adjudication and administration of all water rights within the river system." *Id*. at 556. (citation omitted). Here, by contrast, the two actions present "a garden-variety example of two lawsuits proceeding concurrently in two courts," which does not justify abstention. *Id*. "[T]he mere desire to resolve all issues involving related facts in one court does not justify depriving [a plaintiff] of his federal forum." *Hoai v. Sun Refining & Mktg. Co.*, 866 F.2d 1515, 1520 (D.C. Cir. 1989). *Edge* further explains that "*Colorado River*'s factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." 927 F.3d at 556 (citation omitted); *see 1443 Chapin St., LP v. PNC Bank, Nat. Ass'n*, 718 F. Supp. 2d 78, 84 (D.D.C. 2010) (explaining the special circumstances resulting in "piecemeal litigation" in *Colorado River*). As in *Edge*, "those circumstances do not exist in the case at hand." 927 F.3d at 556.

Additionally, even the garden-variety duplication that Defendants identify would not be avoided by staying this case while the *Coomer* action proceeds. Any rulings in *Coomer* will not bind Dominion, nor will the *Coomer* action even address the many defamatory statements alleged

14

here but not raised in the *Coomer* complaint, or whether any of the statements Coomer alleges were defamatory as to him are defamatory as to Dominion. *See Saddler*, 253 F. Supp. 3d at 222 (denying stay under *Colorado River* where the parties would still need to litigate before the federal court eventually). The possibility of duplication or inconsistent results does not support abstention. And as Defendants note, Dominion has related actions pending before this Court; staying one while the others proceed does not conserve judicial economy. *See* Mot. at 15.

*Order of jurisdiction*. Defendants' sole argument regarding the order of jurisdiction is that "the *Coomer* Action was filed nearly eight months before this case and is much further along." Mot. at 13. First, the Coomer action—as Defendants themselves reference—has been primarily tied up in anti-SLAPP briefing to this point. But putting that aside, the eight-month difference in time of filing does not present an exceptional circumstance warranting abstention. Defendants make no argument why the purported eight-month gap justifies a stay here. *See Edge Inv.*, 927 F.3d at 557 (finding that neither a fifteen-month nor a six-month gap between case filings presented an exceptional circumstance supporting abstention, in contrast to a *four-year* gap relied upon in another matter). In any event, any head start the *Coomer* action may have is irrelevant given that a stay will not create any efficiency gains, but instead will result in indefinitely delaying adjudication of Dominion's claims until sometime in the future.

*Application of state versus federal law*. D.C. law applies to Dominion's complaints, s*ee infra*, pp. 33–35. This factor thus cannot support abstention in favor of a Colorado state court.

Even if Colorado law applied, however, this factor would not support abstention. It is not enough under *Colorado River* that a state's law applies to a claim. "The mere absence of federal law . . . does not counsel in favor of abstention, particularly where, as here, there are no complex or novel state law issues." *1443 Chapin St., LP*, 718 F. Supp. 2d at 85. A contrary view would gut

15

*Colorado River*, resulting in abstention being the rule rather than the exception. Indeed, even the presence of a complicated state law issue is not enough: As the D.C. Circuit stated,

> neither the Supreme Court nor this court has ever listed the novelty or difficulty of a state-law issue as a factor indicating the kind of exceptional circumstances required for deferring to parallel state proceedings under *Colorado River*. ***The presence of novel or difficult state-law questions in federal court litigation is not exceptional***.

*Edge Inv., LLC*, 927 F.3d at 559 (emphasis added). On the contrary, federal courts sitting in diversity jurisdiction routinely address complicated questions of state law. *Id.* at 559 & n.10.

Defendants argue that "Colorado state law on defamation applies and provides greater protection than federal First Amendment jurisprudence." Mot. at 13. Far from arguing that Colorado defamation law presents an unusually complex or unsettled issue, Defendants claim that Colorado courts have clearly resolved its application. *Id*. If Defendants are correct, there is nothing exceptional about asking this Court to apply settled Colorado law.

Furthermore, Defendants contend that the key difference between Colorado and federal law is that Colorado applies the "actual malice" standard in a broader range of circumstances than federal law; but that actual malice standard is exactly the same standard with which federal courts—including this Court—are well familiar. *See id*. at 14. Defendants additionally note that Colorado has an anti-SLAPP statute that "would apply to an action in Colorado." *Id*. That has no bearing on the analysis here, because Colorado's anti-SLAPP statute would not apply to an action before this Court. *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015). This Court's familiarity with the Colorado anti-SLAPP statute is therefore irrelevant.

*Protection of the parties' rights*. Defendants assert that abstention is favored because "there is no reason to believe a state-court proceeding cannot adequately protect the parties' rights." Mot. at 15. But this Court's task is to assess whether exceptional circumstances affirmatively justify

surrender of its jurisdiction, not merely whether another court could adequately hear the case. *See Moses H. Cone*, 460 U.S. at 25–26. Moreover, federal courts have a "virtually unflagging obligation" to exercise their lawful jurisdiction, *Colorado River*, 424 U.S. at 817, and they may not decline to adjudicate a suit "merely because a [s]tate court could entertain it," *Id.* at 814. *See also Hoai*, 866 F.2d at 1520 ("[T]he Supreme Court has clearly instructed that *Colorado River* may not be invoked as a means of getting rid of cases that properly belong in federal court.").

Defendants present none of the exceptional circumstances required for this Court to surrender jurisdiction. For this reason, too, the Court should deny Defendant's abstention request.

**B.    Transfer to the District of Colorado is Neither Permitted nor Warranted.**

Defendants' argument for transfer fares no better than their request for dismissal or a stay. Pursuant to 28 U.S.C. § 1404(a), a court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." Determining whether transfer is appropriate pursuant to § 1404(a) calls for a two-part inquiry: first, the Court must first ask whether the transferee forum is one where the action "might have been brought" originally. *Id*. Second, the Court considers whether private and public interest factors weigh in favor of transfer. *Forest Cnty. Potawatomi Cmty. v. United States*, 169 F. Supp. 3d 114, 117 (D.D.C. 2016). Defendants' argument for transfer fails at each step.

**1.   Defendants have not shown this action could have been brought in Colorado.**

Section 1404(a) authorizes transfer of an action over a party's objection only "to any other district or division where it might have been brought." This dooms Defendants' transfer motion from the outset, as Defendants have not even tried to show that Dominion could properly have brought this action in Colorado.

Defendants assert that this case could have been brought in Colorado solely on the basis that the Colorado court would have jurisdiction over Dominion (an irrelevant point given that a

17

plaintiff voluntary submits to jurisdiction wherever they file) and that Defendants would be willing to "stipulate to personal jurisdiction in Colorado for the purposes of this case." *See* Mot. at 16. But Defendants' *post hoc* willingness to stipulate to personal jurisdiction does not render the District of Colorado a court in which this action "might have been brought" within the meaning of § 1404(a). On the contrary, the Supreme Court addressed this exact point in *Hoffman v. Blaski*, holding that § 1404(a) prohibits transfer of a case to a court that would have lacked personal jurisdiction at the time of filing: "the § 1404(a) phrase 'where it might have been brought'" requires that the transferee Court would have had jurisdiction in the first instance; it does ***not*** mean, as Defendants would have it, "'where it may now be rebrought, with defendants' consent." 363 U.S. at 342–43 (citation omitted); *see Jumpit, AS v. Why ASAP, LLC*, 04-CV-1079 (PLF), 2005 WL 607914, at *2 (D.D.C. Mar. 16, 2005) ("The Supreme Court [ ] has made clear that the appropriate inquiry under § 1404(a) is where a case might have been brought considering the situation as it existed *when the case was originally filed*.").

Put another way, transfer pursuant to § 1404(a) turns "not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman*, 363 U.S. at 343–44; *see also Detroit Intern. Bridge Co. v. Gov't of Canada*, 787 F. Supp. 2d 47, 51 n.2 (D.D.C. 2011) (stating same). This must be the case, as Defendants' theory,

> if adopted, would empower a District Court, upon a finding of convenience, to transfer an action to any district desired by the defendants and in which they were willing to waive their statutory defenses as to venue and jurisdiction over their persons, regardless of the fact that such transferee district was not one in which the action 'might have been brought' by the plaintiff.

*Hoffman*, 363 U.S. at 344.

Defendants offer no other basis on which the District of Colorado has personal jurisdiction

18

over the Defendants beyond their willingness to "stipulate" to it, Mot. at 16, and understandably so: if the Colorado district court has personal jurisdiction over OAN and the Herrings, then this Court unquestionably has specific personal jurisdiction over them given their far more extensive contacts with this District. *See infra*, Part C. Regardless, Defendants have waived any argument for the Colorado court's jurisdiction over them based on anything other than their willingness to so stipulate, and under *Hoffman* and its progeny, their offer to waive any jurisdictional challenge falls short of establishing that this case "might have been brought" in the District of Colorado. Section 1404(a) accordingly does not authorize transfer to that court.[4]

## 2. The private-interest factors weigh against transfer.

Even if the Court had the power to transfer this case to Colorado under § 1404(a), the relevant factors counsel weigh against such a transfer. In its analysis of whether to authorize a § 1404(a) transfer, the Court may consider the following private interest factors:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). The party seeking transfer bears the burden of establishing that convenience and the interests of justice weigh in favor of transfer. *Forest Cnty.*, 169 F. Supp. 3d at 116–17. Defendants have failed to carry their

---

[4] *Groesbeck v. Bumbo Intern. Trust*, 2013 WL 3157922, *2 (S.D. Tex. June 20, 2013), which Defendants cite for the proposition that a court "can 'avoid' difficult personal jurisdiction questions by transferring to a court where the moving party has conceded jurisdiction," does **not** hold that a court may transfer to another jurisdiction simply on the basis that the moving party has "conceded jurisdiction" in the transferee court. *See* Mot. at 26, n.10. Rather, in that case the Texas court merely performed the § 1404(a) transfer analysis first and, finding transfer was justified, did not need to perform the personal jurisdiction analysis given that the parties agreed the transferee forum properly had personal jurisdiction in the first instance.

19

burden here.

*Plaintiffs' Choice of Forum*. Courts in this District "afford substantial deference to the plaintiffs' choice of forum." *Greater Yellowstone Coal.*, 180 F. Supp. 2d at 128; *see Air Line Pilots Ass'n v. E. Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987) ("Plaintiff's choice of forum is given paramount consideration and the burden of demonstrating that an action should be transferred is on the movant."). "How heavily a plaintiff's choice weighs against transfer . . . depends on the existence of a connection between the underlying case and this district. If such a connection exists, the plaintiff's choice of forum is entitled to substantial deference, which outweighs the deference conferred on the defendant's choice of forum." *Nat'l Ass'n of Home Builders v. U.S. E.P.A.*, 675 F. Supp. 2d 173, 180 (D.D.C. 2009) (citations omitted).

Dominion alleges a strong connection between its claims and this District warranting substantial deference to its choice of forum. For instance, Dominion alleges defamatory statements made by OAN's on-air talent who reside in this District—including Rion, Bobb, and others—which were filmed in this District and produced by OAN's bureau located in this District. *See, e.g.*, Compl. ¶¶17, 21, 22, 305(b)–(c) & (e)–(f), Compl. Ex. 382. It alleges that OAN produced its Dominion-related content directly "through OAN's Washington, D.C. office, bypassing OAN's editorial team in California." *Id.* ¶17. It alleges that OAN directly targeted then-President Donald Trump, at the time a resident of this District, as an audience for its defamatory statements about Dominion, with the result being that Trump endorsed both OAN and its claims, which helped OAN in its ratings race with other news outlets. *See, e.g.*, *id.* ¶¶80–82, 102, 118, 147–51.

Defendants concede that this factor weighs against transfer, though they incorrectly characterize the appropriate weight as only "minimal" due to the fact that Dominion does not reside in this District. Mot. at 17. As this Court has already decided, "even a plaintiff's choice of a foreign

20

forum is entitled to some weight when there is a nexus between that forum and the events giving rise to the plaintiff's claims." *US Dominion, Inc. v. Powell*, 2021 WL 3550974, at *17 (Aug. 11, 2021) ["*Dominion I*"] (citing *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 13 (D.D.C. 2000)); *Dominion I*, 2021 WL 3550974, at *18 ("Dominion's choice of forum is entitled to some weight because there is a nexus between the District and the events giving rise to Dominion's claims.").[5] As explained, that is the case here.

Defendants speculate that Dominion filed in this District in an act of "gamesmanship to avoid an anti-SLAPP motion in light of what has transpired in the *Coomer* Action." Mot. at 17–18. However, Defendants filed their Colorado anti-SLAPP motion on April 30, 2021—months *after* Dominion filed its related actions pending before this Court. *See US Dominion, Inc. v. Powell*, 1:21-cv-00040-CJN (filed Jan. 8, 2021); *US Dominion, Inc. v. Giuliani*, 1:21-cv-00213-CJN (filed Jan. 25, 2021); *US Dominion, Inc. v. My Pillow, Inc.*, 1:21-cv-00445-CJN (filed Feb. 22, 2021). Dominion understandably sought to create judicial efficiency by bringing this action in the same forum as its related cases—and in the district where two Defendants (Rion and Bobb) reside, one Defendant (OAN) has a primary office, and all Defendants conduct business (*see infra*, Part C.1.a).

---

[5] Defendants' cases do not state otherwise. *Wilderness Society*—which this Court cited in *Dominion I*—expressly acknowledged that "[t]he degree of deference accorded to these plaintiffs' choice of forum therefore depends upon the nexus between plaintiffs' chosen forum—the District of Columbia—and the dispute" at issue, 104 F. Supp. 2d at 13; and *Thayer/Patricof Education Funding v. Pryor Resources Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002) cites to *Wilderness Society* for its statement of the law regarding a plaintiff's choice of forum, *see id*. The court in *Trout Unlimited v. United States Dep't of Agriculture*, 944 F. Supp. 13 (D.D.C. 1996) similarly noted the importance of whether the plaintiff's chosen forum has "meaningful ties to the controversy." *Id*. at 16 (citation omitted). And Defendants omit from their parenthetical for *Citizen Advocates for Responsible Expansion, Inc. v. Dole*, 561 F. Supp. 1238 (D.D.C. 1983), the latter half of the sentence in which the court found a plaintiff's choice of forum receives less deference when the plaintiff resides in the transferee forum "*and* the connection between plaintiffs, the controversy and the chosen forum is attenuated." *Id.* at 1239 (emphasis added); *see* Mot. at 17 (omitting this quoted portion).

*Defendants' Choice of Forum*. Unlike a plaintiff's forum choice, a defendant's choice of forum "is not ordinarily entitled to deference" in the § 1404(a) transfer analysis. *Sheffer v. Novartis Pharm. Corp.*, 873 F. Supp. 2d 371, 376 (D.D.C. 2012). "And here, where Defendants move to transfer over Plaintiff's opposition, they must establish that the added convenience and justice of litigating in their chosen forum overcomes the deference ordinarily given to Plaintiff's choice." *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 32 (D.D.C. 2013).

Defendants' only justifications for seeking this Court's deference to their choice of forum merit minimal weight. Defendants argue only (1) the fact that Dominion has its headquarters in Colorado, and (2) a former employee residing in Colorado has sued Rion and OAN in Colorado state court. Mot. at 18. As to the former, the sole fact of Dominion's residence does not outweigh the deference given to Dominion's choice of a forum with a close nexus to the claims—or, for that matter, the remaining factors weighing against transfer here, *see infra*. *See, e.g.*, *Malveaux v. Christian Bros. Servs.*, 753 F. Supp. 2d 35, 40 (D.D.C. 2010) (non-resident plaintiff's choice of forum was nevertheless "entitled to substantial deference" based in part on the fact that events giving rise to her claims occurred in the forum); *Nat'l Ass'n of Home Builders*, 675 F. Supp. 2d at 180. As for the pending *Coomer* action against Rion and OAN, that cannot plausibly overcome the deference afforded to Dominion's choice of this District as its forum, given that Rion resides in this District and both Rion and OAN conduct extensive business in this District.

*Location where the Claims Arose*. Dominion's claims arise in significant part from Defendants' actions in this District, further weighing against transfer. "Courts in this district have held that claims 'arise' under 28 U.S.C. § 1404(a) in the location where the corporate decisions underlying those claims were made, or where most of the significant events giving rise to the claims occurred." *Douglas*, 918 F. Supp. 2d at 32 (citation and alteration omitted). Dominion

22

alleges that "OAN's Dominion-related content was produced and broadcast through OAN's Washington, D.C. office, bypassing OAN's editorial team in California." Compl. ¶17. The defamatory segments featuring Rion and Bobb—directed and edited by the Herrings—were filmed and produced in this District. *See id.* at ¶¶17–22, 43–48. And OAN directly targeted the most famous resident of the District, then-President Donald Trump, as a key audience for its defamatory statements about Dominion. *See, e.g.,* Compl ¶¶58–61, 69, 80, 102, 118, 147–51.

Defendants nevertheless argue that Dominion's claims arose in Colorado based on (1) the location of Dominion's headquarters, and (2) the fact that Oltmann made his statements in Colorado. Mot. at 18. Defendants do not even try to explain how Dominion's residence is relevant other than to wrongly claim—without any citation—that "the reality is" any harm would have occurred only in Colorado. *Id.* And Defendants ignore that Oltmann's statements—which amount to just **one** of the **twenty-five** different defamatory broadcasts alleged by Dominion, *see infra*, p. 9, & Compl. ¶305(a)–(y)—were broadcast as part of OAN's Washington, D.C.-based programming, *see id.* at ¶¶17, 21–22, 305(a)–(y).

Defendants' motion also seems to forget that *Oltmann* is not a defendant here; OAN and its senior executives and reporters are. It is the actions of *Defendants* that directly gave rise to Dominion's claims—specifically with respect to Oltmann, it is *Defendants'* publication of Oltmann's statement, not Oltmann's decision to speak. The broadcast segments that Defendants produced featuring Oltmann were produced through OAN's Washington, D.C. bureau. *Id.* ¶17. They featured its D.C.-based reporter, Rion. *Id.* ¶305(d) & (f). None of the Defendants acted in Colorado beyond the nationwide broadcasts that similarly aired in every other forum.

In *Dominion I*, this Court held that because Powell failed to "provide the Court with any conduct *in Texas* that gave rise to Dominion's claims," she had "fail[ed] to demonstrate that

23

transfer to that district is warranted on that basis." 2021 WL 3550974, at *17 (emphasis in original). The same is true here. Defendants point to no conduct they undertook in Colorado. The location where the claims arose does not support transfer from this District to Colorado.

*Convenience of the Parties.* This District provides the far more convenient forum for the parties. Dominion filed suit in this District and has voluntarily submitted to this Court's jurisdiction. Its convenience is thus not at issue. *See Sheffer*, 873 F. Supp. 2d at 377. Two of Defendants, Rion and Bobb, reside in this District, and OAN has one of its two bureaus located here (along with all of the producers, on-air talent, aides, and other staff employed at its D.C. bureau). Compl. ¶¶17, 21–22. OAN has recently voluntarily litigated in this District, moving for leave to file in *Cable News Network, Inc. v. Trump*, 1:18-CV-02610 (TJK) (D.D.C.), Ex. 1, and is currently defending against another defamation suit in this District, *see* Ex. 2. As OAN noted in a motion for leave to file in litigation here, "OAN is a 24/7 national cable network with reporters and videographers covering the White House daily. One America News Network provides live coverage daily and its Chief White House Correspondent covers briefings on a regular basis." Ex. 1 at ¶2. OAN even went so far as to claim particular and unique familiarity with news coverage in this District. *Id*. ¶4 ("OAN, with staff reporting each day from the White House is uniquely qualified to provide this Court with information and insight based on its experience and mission in covering the White House."). Charles Herring's social media has placed him in this District and, upon information and belief, he resides here, *id*. ¶¶20, 45. At a minimum, he regularly travels to this District as part of his oversight and control over OAN's operations, *id*. ¶20, *see also* Ex. 3 at ¶9, and both Herrings have conducted business negotiations in this District, Compl. ¶20. This District is a far more convenient forum for the parties than Colorado.

Defendants concede that none of them reside in Colorado, Mot. at 18, OAN has no office in Colorado, and Defendants do not argue that any of them conduct business in Colorado. And any

24

convenience to *Dominion* does not justify transfer from Dominion's choice of forum. *Sheffer*, 873 F. Supp. 2d at 377 ("Convenience [ ] is not a handicap to be foisted upon an unwilling adversary."). Defendants argue only that there are unspecified "efficiencies" to litigating in the District of Colorado given that two of the five Defendants (Rion and OAN) are named defendants in a pending Colorado state court action. Mot. at 18. But Rion resides in this District: the argument that Colorado provides a more convenient forum than her home is absurd. Similarly, OAN's bureau that is central to Dominion's Complaint is located in this District, not in Colorado. The notion that Colorado is more convenient than this District for OAN's bureau based here—and all of OAN's D.C.-based employees, including anchors like Rion, Bobb, and Elma Aksalic (*see* Compl. ¶¶110, 306), as well as those behind the cameras—cannot reasonably be credited.

Defendants admit that Colorado is not a convenient forum for Defendant Bobb who, like Defendant Rion, resides in this District. Mot. at 19. Defendants brush away any supposedly "minor" inconvenience of asking Bobb to litigate in Colorado as "outweighed" by the purported convenience to "all other parties." *Id.* But Defendants provide no basis for their conclusory assertion that Colorado is "the more convenient forum for all other parties." *Id*. It certainly is not for D.C. resident Rion or for OAN with its Washington, D.C. office. And Defendants do not argue any connection at all between either of the Herrings and Colorado. *Id*. Defendants claim only that the pending *Coomer* action renders Colorado the more convenient forum for the Herrings, despite the fact that neither has been named as a defendant in that case. *See id*.

*Convenience of the Witnesses.* Courts in this District consider the convenience of non-party witnesses "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Greater Yellowstone Coal.*, 180 F. Supp. 2d at 127; *Mahoney v. Eli Lilly & Co.*, 545 F. Supp. 2d 123, 126 (D.D.C. 2008) (same). This factor requires the moving party to specify "'what a

25

nonresident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction.'" *Sheffer*, 873 F. Supp. 2d at 378 (quoting *Thayer/Patricof Educ. Funding*, 196 F. Supp. 2d at 33).[6] OAN provides barely any of this information for the supposed "*16 non-party witnesses*" that it claims reside or "presumably reside" in Colorado, Mot. at 21 (emphasis by Defendants), and for good reason. The vast majority have (at most) minimal (or no) relevant testimony, and Defendants do not argue that any witness has indicated an unwillingness to travel to this District for trial, nor do Defendants identify which, if any, of these witnesses would need to do so. Defendants cannot supply this information relevant to the Court's analysis for the first time in their reply.

*Dr. Eric Coomer and Joseph Oltmann*: Coomer and Oltmann are the only two witnesses on Defendants' list that are mentioned in Dominion's Complaint. However, Coomer is far from the central figure in this action that Defendants attempt to paint him as being. Dominion's Complaint mentions Coomer in just *5* of its 331 paragraphs. *See* Compl. ¶¶121, 135, 256, 305(d), 305(f). This is fewer times than the Complaint mentions, for instance, Chris Krebs (*see id*. ¶¶10, 65, 79, 100, 149, 305(f)) or William Barr (*id.* ¶¶10, 32, 57, 65, 152, 153, 171, 175, 254, 305(p)), both potential non-party witnesses who work or reside in this District; and vastly fewer times than the Complaint mentions other non-party witnesses for whom Dominion alleges connections to this District but for whom Defendants contend no connection whatsoever to Colorado.

As for Oltmann, he is but one of eight named "relevant non-parties" listed in Dominion's

---

[6] Defendants' case *Beall v. Edwards Lifesciences LLC*, 310 F. Supp. 3d 97 (D.D.C. 2018), does not hold the contrary. Rather, there the court found based on defendants' motion that the third-party witnesses would have specific testimony regarding the central issues in the case, and that live testimony would be important because their credibility could be at issue, which supported transfer to the forum where they were located. *Id.* at 105–06. Defendants have not provided any evidence demonstrating that the testimony of their supposed "non-party witnesses" would be similarly critical or that live testimony—or any testimony—would similarly be required.

Complaint, along with allegations tying them to this action. Compl. ¶¶23–38 (naming "Relevant Non-Parties" Sidney Powell, Rudolph Giuliani, Michael Lindell, Ron Watkins, Ed Solomon, Patrick Byrne, Joe Oltmann, and Russell Ramsland). Of those eight, only Oltmann has any connection to Colorado. However, Dominion alleges that Oltmann also traveled to this District to push his lies that Dominion rigged the 2020 election. *See, e.g.*, *id.* ¶189. This District thus is not an unreasonably inconvenient forum for Oltmann to visit, nor do Defendants argue that he would be unwilling to do so.

More importantly, Defendants argue ***no connection whatsoever*** between Colorado and the remaining seven "relevant non-parties" named in Dominion's Complaint. Dominion, however, alleges travel to this District or cites to interviews conducted here for five of the remaining seven non-parties—and unlike Defendants' list of "non-party witnesses," Dominion's non-party witnesses actually feature in Dominion's Complaint and have testimony potentially relevant to this case. *See, e.g.*, *id.* ¶189; ¶67 & n.89 (citing video of Rion interviewing Powell outside White House); ¶305(h) n.337 (citing Dec. 4, 2020 interview of Giuliani in which he appears "live from Washington, D.C."); ¶184 (citing Giuliani interview conducted in D.C.); ¶¶142–144 & *id*. Ex. 384 (Nov. 23, 2020 interview in which Rion in OAN's D.C. studio hosted Byrne live and in person).

In addition, this Court is currently exercising personal jurisdiction over Powell, Giuliani, and Lindell in Dominion's pending cases against those individuals, *see Dominion I*, 2021 WL 3550974, at *15–16, supporting this as a convenient forum for those third-party witnesses.

***Joey Camp, Jan Wondra, and the* Denver Post:** Defendants name Camp, Wondra, and an unnamed "representative of the *Denver Post*" without providing any explanation as to what any would testify to in this action, why their testimony would be important to the issues raised here, or whether they would be willing to appear for trial in this District were there any plausible reason

for either party to call any of them, which there is not. *See* Mot. at 20–21.

***Tay Anderson, Heidi Beedle, and Erik Maulbetsch***: Defendants fail to specify what Anderson, Beedle, or Maulbetsch would testify to or why their testimony would be relevant, instead citing without explanation to testimony that each has provided in the *Coomer* action. Mot. at 20. Defendants do not argue that any of these individuals would need to be called at trial in this action, and to the extent the parties seek similar discovery from them in this action, there would be no need to require any of them to travel to this District.

***Eight anonymous "potential witnesses"***: Defendants reference eight additional anonymous witnesses that Defendants "presume" are Colorado residents, though they have no evidence of that fact. *See* Mot. at 20–21. Defendants once again provide no explanation as to what these unnamed witnesses (who may or may not reside in Colorado) would say at trial, why it would matter in this case, or whether these unnamed witnesses would be willing to appear at trial in this District in the imaginary scenario where either party chose to call them.

***Hypothetical former Dominion employees***:  Defendants finally point to unnamed, hypothetical "former employees of Dominion who previously worked at Dominion's U.S. headquarters in Colorado" as potential witnesses. Mot. at 21. Defendants' argument regarding such "former employees" is wholly speculative and provides no information from which the Court could ascertain whether any hypothetical former employees with relevant knowledge actually still reside in Colorado or why they would need to travel to trial—and if so, whether they would be willing to do so. These unidentified, hypothetical witnesses have no bearing on the Court's analysis.

***

By contrast, Dominion's Complaint lists numerous relevant non-parties with ties to this District. In addition to the eight "relevant non-parties" that Dominion expressly designates as

28

such—six of whom have a connection to this District, but only one of whom has any connection to Colorado—Dominion's Complaint names other relevant third parties working or residing in this District. For instance, Dominion's Complaint alleges that Alex Bruesewitz appeared on OAN and spoke at a rally in this District perpetuating Defendants' election-fraud lies, and Bruesewitz publicly represents that he resides in this District. Compl. ¶155; Ex. 4. Dominion's Complaint names multiple other non-parties living or working in this District who may have information relevant to Dominion's allegations, including Stephanie Hammill (former OAN anchor, *see* Compl. ¶¶305(h), 306, now working for Fox in D.C., *see* Ex. 5), Chris Krebs (Compl. ¶¶10, 65, 79, 100, 149), Ben Hovland (*id*. ¶ 10), William Barr (*id*. ¶¶10, 32, 57, 65, 152, 153, 171, 175, 254, 305(p)), and Jenna Ellis (*id*. ¶141).

Defendants cite *Armco Steel Co., L.P. v. CSX Corp*., 790 F. Supp. 311, 324 (D.D.C. 1991), for its parenthetical quoting a 1988 Delaware case stating "[C]omparative abilities of the transferor and transferee forms to subpoena nonparty witnesses is a critical factor in determining the interests of justice' in deciding a § 1404(a) motion." Mot. at 21. *Armco* itself did not adopt this statement from the Delaware court as part of its own holding. *See Armco Steel*, 790 F. Supp. at 324. But putting that aside, courts in this District have repeatedly held that a court's ability to subpoena a non-party witness is only relevant if the witness (1) will need to be called at trial and (2) would not appear at trial absent a subpoena. *See, e.g.*, *Thayer/Patricof Educ*., 196 F. Supp. 2d at 33; *Mahoney*, 545 F. Supp. 2d at 126. Defendants, again, provide no argument that any of their supposedly relevant non-party witnesses would need to attend trial or would be unwilling to do so.

*Ease of Access to Sources of Proof.* Courts in this District have previously recognized that "technological advances have significantly reduced the weight of the ease-of-access-to-proof factor." *Douglas*, 918 F. Supp. 2d at 33 (quoting *Nat'l R.R. Passenger Corp. v. R & R Visual, Inc*.,

29

No. 05–822, 2007 WL 2071652, at *6 (D.D.C. July 19, 2007) and collecting cases). Most document discovery has long been produced via ESI, and courts' recent experiences with remote depositions has made geographic location of witnesses even less significant for facilitating discovery. Defendants nevertheless claim that this factor supports transfer on the basis that it will "make it easier for Dominion to access relevant documents" and to prepare its party witnesses. Mot. at 22. But once again, Dominion has agreed to litigate here; its convenience is not at issue.

Defendants contend that transfer will purportedly "make it easier for non-party witnesses to participate," but that ignores that the vast majority of relevant non-party witnesses have no connection to Colorado whatsoever, *see supra* pp. 26–29. And it is unclear how or why Defendants believe that *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42 (D.D.C. 2011)—a case that ***denied*** transfer—supports their unexplained assertion that "transferring this case to Colorado 'will lead to a net increase in convenience for all parties.'" Mot. at 22. On the contrary, that case underscores that the multiple related cases in this forum weigh against transfer. *U.S. ex rel. Westrick*, 771 F. Supp. 2d at 47 ("Because there are four other related cases pending before this Court, transferring this case would allocate inefficiently scarce judicial resources.").

Defendants also inexplicably assert that because of the pending *Coomer* action in Colorado state court, "the parties will have the benefit of discovery in that case." Mot. at 22. But there is no reason a federal action pending in the District of Colorado would derive greater benefit from any relevant discovery conducted in Colorado state court than a federal action in this District. By contrast, there is ample reason to believe that the parties will benefit from coordinating Dominion's related actions pending before this Court for purposes of discovery. Dominion's pending actions against Giuliani (Case No. 21-cv-00213), Powell (Case No. 21-cv-00040), Lindell and MyPillow (Case No. 21-cv-00445), and Byrne (Case No. 21-cv-02131), involve many of the same key

30

witnesses and facts alleged here—indeed, each of Giuliani, Powell, Lindell, and Byrne play prominent roles in Dominion's instant Complaint.[7] Defendants suggest that the Court should not slow those cases to accommodate this one; there is absolutely no reason why the Court would need to do so. The actions against Powell, Giuliani, and Lindell have only recently begun discovery, and the parties are still briefing Byrne's motion to dismiss. The efficiency of coordinating discovery in all of Dominion's actions before this Court weighs strongly against transfer.

### 3.   The public-interest factors weigh against transfer.

Courts considering a transfer motion also weigh public-interest factors, including "(1) the local interest in making local decisions regarding local controversies; (2) the relative congestion of the transferee and transferor courts; and (3) the potential transferee court's familiarity with the governing law." *Boland v. Fortis Const. Co., LLC*, 796 F. Supp. 2d 80, 91 (D.D.C. 2011). None of these factors support transfer here.

*Local Interest.*   No local interest in Colorado exists that would outweigh this District's interest in deciding claims arising from conduct that occurred overwhelmingly in this District. As explained, Dominion's claims arise from Defendants' defamatory statements filmed and produced in this District. *See supra*, pp. 22–23. No part of Defendants' conduct occurred in Colorado beyond beaming national broadcasts into the state. Defendants' sole argument for Colorado's purported interest in deciding Dominion's claims is that Dominion is headquartered there, and a former employee, Coomer, separately alleges that he suffered harm in Colorado due to conduct of two of the Defendants. Mot. at 23. Where injury to Coomer—who is not a party in this action—occurred is irrelevant to the analysis here. And while Dominion certainly suffered nationwide reputational

---

[7] *See, e.g.*, Compl. ¶¶4, 23–26, 39, 41, 67, 84, 177, 180, 183–84, 189–90, 197–224, 243, 253, 305(g)–(h), (k)–(n), (p)–(u), (w)–(y).

harm, including in Colorado, Dominion was injured in this District from which the Defendants propagated their defamatory statements. *See infra*, pp. 43–44. This District has a stronger interest in adjudicating controversies arising from conduct that occurred here than Colorado does in adjudicating an action based on Dominion's residence. *Cf. US Dominion I*, 2021 WL 3550974, at *19 ("Minnesota's interest in deciding controversies regarding the Lindell Defendants is outweighed by this district's interest in controversies arising from events that occurred here.")

Additionally, where a case is "of national, rather than local, significance, this factor tips sharply against transfer." *Stewart v. Azar*, 308 F. Supp. 3d 239, 249 (D.D.C. 2018*); see The Wilderness Soc'y*, 104 F. Supp. 2d at 17. To be sure, Dominion alleges tremendous harm it suffered as a company and seeks to recover substantial damages from OAN for that harm. But Defendants' conduct did not just affect Dominion; it had an enormously pernicious nation-wide impact on the public's perception of the 2020 Election. Compl. ¶¶263–67. This case is plainly "of national, rather than local, significance," which also weighs strongly against transfer to Colorado. *See Stewart*, 308 F. Supp. 3d at 249; *Babbitt*, 104 F. Supp. 2d at 17.

*Relative Court Congestion.* This factor does not support transfer here; to the contrary, it weighs against it. Defendants' own Exhibit Q, which sets forth the Judicial Caseload Profiles for this District and Colorado, undermines Defendants' request for transfer. The most recent annual statistics show that this District had 4,666 filings spread across 15 judgeships (none of which were vacant), amounting to **311** filings per judge. Defs' Mot. Ex. Q. Colorado, by contrast, had 4,308 filings spread across 7 judgeships, which amounts to **615** filings per judgeship—that is nearly **double** the congestion in the District of Columbia, and does not even account for Colorado's 12 vacant judgeship months (during which filings would be distributed among only 6 judges). *Id*. Moreover, the data also reflect that as of June 30, 2021, this District has 306 weighted filings per

judge compared to the District of Colorado's 638 weighted filings per judge. Weighted filings "account for the different amounts of time district judges require to resolve various types of civil and criminal actions." Admin. Office of the U.S. Courts, *Explanation of Selected Terms*, https://www.uscourts.gov/sites/default/files/explanation-of-selected-terms-september-2014_0.pdf. Cases that require more judicial resources than the average civil case because of their complexity and scope receive a higher weight. *Id.* Defendants mention only the total number of filings in each district, Mot. at 23, but those isolated figures say nothing about how congested any given court's docket will be. This District handles only slightly more cases than Colorado, spread across more than twice as many judges. That indicates significantly greater docket congestion in Colorado and weighs against transfer.

Defendants also point to time to trial as relevant here; but the last available time to trial statistics for a single year show only an approximately six-month difference in median time to trial (40 months in this District versus 33.9 in Colorado as of June 2020, the last date with statistics reported for both districts).[8] *See* Mot. Ex. Q. However, as one court in this District has noted, "[a]ny disparities between the lengths of time from filing to trial may [ ] reflect differences other than congestion, such as differences in the types of cases that are likely to be tried in each district and the level of discovery and pre-trial motion practice required in those cases." *U.S. v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 84 (D.D.C. 2011) (treating relative congestion as neutral).

*Familiarity with governing law.* Familiarity with the governing law does not justify transfer, as Defendants cannot demonstrate at this stage that Colorado law rather than D.C. law will apply. Indeed, taking Dominion's allegations as true, D.C. law governs.

---

[8] Defendants incorrectly state that the time to trial in this District versus Colorado was, as of June 30, 2021, 40 months versus 32.8. Mot. at 23. This District does not have a reported median time to trial figure for 2021. *See* Defs.' Mot. Ex. Q.

The District of Columbia's rules apply to the choice of law analysis. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). As the D.C. Circuit has explained,

> D.C. choice-of-law rules require that we apply the tort law of the jurisdiction that has the 'most significant relationship' to the dispute. That inquiry requires that we consider where the injury occurred, where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship is centered.

*Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014) (citation and quotation marks omitted).

The injury Dominion alleges to its reputation and to its existing and prospective contracts occurred nationwide, Compl. ¶¶301–03; but a significant amount of that harm occurred in this District, where OAN directly—and successfully—targeted then-President Trump as an audience for its defamatory allegations. *See* Compl. ¶¶58–61, 69, 80–82, 102, 118, 147–51. Similarly, Defendants' defamatory broadcasts giving rise to Dominion's claims were filmed at and produced by OAN's bureau in this District. Compl. ¶17; *see infra*, Part C.1.a (describing Defendants' conduct in this District). OAN addresses none of this, instead stating, in conclusory fashion and without citation, that Colorado "is the place where the injury (if any) primarily occurred," and where "at least some of the alleged conduct causing the alleged injury occurred"—specifically, statements made by a ***third party***, Oltmann. Mot. at 24. Neither point shifts the balance in favor of Colorado law.

The first two factors in the choice-of-law analysis support applying D.C. law in light of Dominion's allegations regarding Defendants' conduct in this District and the resulting harm to Dominion. To the extent there could be any doubt that D.C. law should apply, it is "at least as likely at this stage" that the law of this District will apply. *See Robinson v. Eli Lilly & Co.*, 535 F. Supp. 2d 49, 53–54 (D.D.C. 2008) (considering allegations of harm and conduct occurring in multiple Districts and holding that "it is as likely at this stage that District of Columbia substantive

34

law will apply given the plaintiffs' theory of tortious conduct occurring in this jurisdiction.").

The third choice-of-law consideration, the domicile, residence, or place of business of the parties, similarly does not establish that Colorado law governs. On the contrary, while Dominion has its headquarters in Colorado, Defendants Rion, Bobb, and, upon information and belief, Charles Herring, reside in D.C., and all Defendants conduct business in this District. Compl. ¶¶17–22; *infra*, Part C. None of the Defendants have an established place of business or residence in Colorado. Defendants completely ignore this, arguing only that "OAN does not reside in the District of Columbia." Mot. at 24. And Defendants themselves admit the fourth factor, the parties' relationship, is neutral, *id.*, and thus cannot swing the balance in favor of Colorado law.

Finally, even if Colorado law applied, Defendants point to no authority holding that this would overwhelm the rest of the factors tipping firmly against (or entirely prohibiting) transfer.[9]

### 4. Neither the potential for inconsistent judgments nor the earlier filing of the *Coomer* Action supports transfer.

Defendants raise two final arguments for transfer premised on the pending *Coomer* action in Colorado state court, neither of which tips the balance in their favor.

*First*, Defendants argue that this Court and the *Coomer* court could reach different conclusions about whether the few overlapping statements "were true or substantially true, whether they were subject to any applicable privilege, and/or whether Defendants acted with actual malice." Mot. at 25. Putting aside that the bulk of the defamatory statements Dominion alleges are not at issue in the *Coomer* action, transferring to Colorado does nothing to alleviate Defendants' purported concerns regarding inconsistent judgments. This case cannot be consolidated with a

---

[9] Defendants emphasize as "critical" the point that the Colorado anti-SLAPP statute would apply to an action in Colorado." Mot. at 24. Defendants do not explain why that matters to the analysis. It does not: because the Colorado anti-SLAPP statute does not apply here, *see Abbas*, 783 F.3d at 1333, this Court will not be required to interpret (or apply) it.

Colorado state action under § 1404(a). Thus, this action will proceed before a federal court—either in Colorado or in this District—that may reach conclusions different from those reached by the Colorado state court (in a case, again, where Dominion is not a party).[10]

*Second*, Defendants argue that transfer is appropriate because the *Coomer* action was filed first. Mot. at 25. Yet as Defendants concede, the first-to-file rule does not apply because the *Coomer* action is pending in state court, not a federal court to which this action could be transferred. *Id*. at 26. Defendants nevertheless cite three cases that based transfer in part on similar litigation already pending **in the transferee forum**. Mot. at 25 (citing *Bader v. Air Line Pilots Ass'n, Int'l*, 63 F. Supp. 3d 29, 36 (D.D.C. 2014); *Tice v. Pro Football, Inc.*, 812 F. Supp. 255, 257 (D.D.C. 1993); *Holland v. A.T. Massey Coal*, 360 F. Supp. 2d 72, 77 (D.D.C. 2004)). Those cases are irrelevant: this action cannot be transferred to the same forum as the *Coomer* action.

None of the remaining three out-of-district cases cited by Defendants involve application of any analog to the "first-to-file" rule in the context of an earlier filed state court matter. Rather, the courts in two cases—*Davis Aviation Specialties* and *Howard Acquisitions LLC*—undertook individualized analyses of the relevant transfer factors and found that litigating in a federal forum near the state court action was a relevant factor in the context of those particular cases. *See Davis Aviation Specialties, Inc. v. Trace Engines, L.P.*, 2009 WL 10675003, at *10–11 (E.D. Tenn. Dec. 29, 2009); *Howard Acquisitions LLC v. Giannasca New Orleans LLC*, 2009 WL 10684988, *5 (E.D. La. Oct. 7, 2009). And in *Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A.*, 2011 WL 3329087 (D.N.J. Aug. 2, 2011), the court expressly stated that while co-pending state litigation existed, "more persuasive than similar pending state court litigation is the pendency of

---

[10] Defendants' citation to *California Farm Bureau Federation v. Badgley*, 2005 WL 1532718 (D.D.C. June 29, 2005) is inapposite. In that action, two cases were pending in separate federal district courts and could thus be consolidated in a single district. *See id*. at *2; Mot. at 22.

36

four actions in the United States District Court" for the transferee District. *Id.* at *6. No such actions exist pending in the District of Colorado. While Coomer's pending Colorado state court action provides no basis to transfer to the federal court in Colorado, the related cases pending before this Court weigh strongly in favor of it retaining jurisdiction. *See supra*, pp. 21, 30. "Where a Court has gained knowledge and familiarity with the facts, the interests of justice and concerns of efficiency militate in favor of retaining the suit." *Douglas*, 918 F. Supp. 2d at 34 (collecting cases). For this reason, too, the Court should deny Defendants' motion to transfer.

**C.      OAN and the Herrings Are Subject to Personal Jurisdiction in This District.**

**1.  D.C.'s long-arm statute confers jurisdiction over OAN and the Herrings.**

A federal court has jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). As this Court has noted, "if a District of Columbia court could exercise jurisdiction over the Defendants, then so can this Court." *Dominion I*, 2021 WL 3550974, at *14 (citation omitted). Here, for many of the same reasons addressed in *Dominion I* regarding the Powell and Lindell defendants, this Court has specific jurisdiction over the Herrings, and OAN.

When assessing specific jurisdiction, the Court "must engage in a two-part inquiry: . . . first examine whether jurisdiction is applicable under the [D.C.] long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citation omitted). The D.C. long-arm statute authorizes specific jurisdiction "over a person, who acts directly or by an agent, as to a claim for relief arising from" the following actions: (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; or (4) causing tortious injury in the District of Columbia by an act or omission outside

37

the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. D.C. Code § 13-423(a)(1)–(4). A plaintiff need satisfy only one of these prongs. *See id*. OAN and the Herrings are subject to this Court's jurisdiction under D.C.'s long-arm statute under the first, third, and fourth prongs of the statute.

### a. This Court has jurisdiction under D.C.'s long-arm statute because OAN and the Herrings transacted business in this District.

OAN and the Herrings transacted business in this District, and Dominion's claims arise out of those transactions. *See* D.C. Code §13-423(a)(1). Subsection (a)(1) applies where "the defendant has purposefully engaged in some type of commercial or business-related activity directed at District residents." *Holder v. Haarmann & Reimer Corp*., 779 A.2d 264, 270–71 (D.C. 2001). This provision "permits the exercise of personal jurisdiction to the full extent authorized by the Due Process Clause," and "a single act may be sufficient to constitute transacting business, so long as that contact is voluntary and deliberate, rather than fortuitous." *Quality Air Servs., L.L.C. v. Milwaukee Valve Co*., 567 F. Supp. 2d 96, 100 (D.D.C. 2008) (citations and quotations omitted); *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 331 (D.C. 2000) (en banc) ("Even a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here." (citation and quotation omitted)). The statute encompasses a broad array of business activities, including advertising in the District, *see Shoppers Food Warehouse*, 746 A.2d at 330–32, operating an office in the District, *see Wilson v. Wilson*, 785 A.2d 647, 650 (D.C. 2001), or traveling to the District for a business purpose when accompanied by "some kind of 'transaction' in the traditional sense," *IMAPizza, LLC v. At Pizza Ltd*., 334 F. Supp. 3d 95, 112 (D.D.C. 2018).

OAN's business is broadcasting media content, and Dominion's complaint arises in large

38

part from broadcast content OAN produced in Washington, D.C. OAN maintains just two locations, one of which is its news bureau in Washington D.C. Compl. ¶17. As Dominion alleges, "OAN produced and broadcast its Dominion-related content through its Washington, D.C. office." *Id*. OAN intentionally established itself in Washington, D.C., partnering with *The Washington Times* so that it would have the reporting resources to help OAN's viewers "make sense of developments in an increasingly complex, and polarized city." *Id*. ¶20 (citation omitted). OAN filmed the defamatory broadcasts made by Defendants Rion and Bobb—over whom Defendants do not contest this Court's jurisdiction—in Washington, D.C.. *See, e.g.*, *id*. ¶¶21–22. And OAN directed and advertised its defamatory broadcasts to D.C. policymakers and residents, including one D.C. resident in particular: then-President Trump. *See id*. ¶¶58–61, 69, 80. OAN understood that garnering attention from Trump's base was the key to expanding its viewership, and the key to attracting Trump's base was securing then-President Donald Trump as a viewer himself. *Id*. ¶80. OAN thus broadcast damaging and verifiably false stories that fit a preconceived election-fraud narrative, centered on baseless accusations regarding Dominion, in order to attract attention from and curry favor with the most powerful D.C. resident, then-President Trump. *Id*. ¶¶58–61, 69, 80–82, 102, 118, 147–51. This activity falls well within § 13-423(a)(1).[11]

The Herrings similarly conduct business in this District, exercising control over the

---

[11] Section 13-334 of the D.C. Code additionally supports this Court's exercise of jurisdiction over OAN, as it authorizes personal jurisdiction over a non-resident corporation doing business in this District if a plaintiff serves the corporation with process in this District. *AMAF Intern. Corp. v. Ralston Purina Co*., 428 A.2d 849, 850–51 (D.C. 1981). For the purpose of this section, "doing business" means "any continuing corporate presence in the forum state directed at advancing the corporation's objectives." *Id*. at 851 (collecting cases). Section 13-334 supports jurisdiction over OAN here: *first*, OAN does business in this District. *See supra*. *Second*, Dominion served OAN in this District. *See* ECF NO. 23. *Third*, exercising jurisdiction over OAN comports with due process given OAN's continuous and systematic presence in this district through its D.C. bureau. *See supra*; Compl. ¶17; Ex. 6 p. 1 (OAN's statement of its presence in this District).

39

defamatory broadcasts giving rise to Dominion's claims. They do so through OAN, over which they jointly exercise complete control. Compl. ¶¶18–20. Additionally, Charles Herring regularly travels to and transacts business in Washington, D.C., including as part of his oversight and control of OAN's D.C. operations. *Id*. ¶20; *see also* Ex. 3 ¶9. Together, the Herrings negotiated the partnership between Herring Broadcasting and *The Washington Times* that launched OAN as an alternative source of far-right news, positioning it to compete with Fox. *Id*. ¶20. And the Herrings exercised complete control over the Dominion-related content produced by OAN's D.C. bureau: Dominion alleges that "The false Dominion stories were examples of what were referred to internally at OAN as 'H stories'—that is, stories that the Herrings personally approved and required OAN to run, with the Herrings exercising control over their content, and without the California editorial team (or anyone else) fact checking the stories or vetting sources." *Id*. ¶19. Charles Herring "reviewed drafts, and approved final drafts for broadcasting of some of the false Dominion stories" that Dominion accuses, *id.*; and Robert Herring acted as "de facto news director" and influenced "every aspect of the newscast," *id*. ¶18. The Herrings thus both transact business in this District directly and through OAN in light of their roles as high-ranking corporate officers who directed production and publication of its defamatory broadcasts.

The Herrings' tweets underscore that their broadcasted stories fabricating lies about Dominion's role in the election were directed at the White House: Both Robert and Charles Herring published tweets directed toward then-President Donald Trump (often explicitly tagging him using his Twitter handle, "@realDonaldTrump"), advertising OAN directly to him and reassuring him that OAN would continue to propagate his fictional election-fraud narrative centered on Dominion. *See, e.g.*, *id.* ¶274 (quoting Robert Herring tweet, "I think the American people should start a fund to help support House and Senate members who are brave enough to show @realDonaldTrump

40

that they have his back, and are fighting for a fair election. @OANN"); *id*. ¶¶97, 109, 153, 161, 274, 305(f). And Dominion alleges that OAN broadcast a segment titled, "REPORT: DOMINION DELETED 2.7M TRUMP VOTES NATIONWIDE," which then-President Donald Trump tweeted out to his more than 88 million followers as evidence that Dominion rigged the election and stole it from him—which was exactly what OAN intended. *Id*. ¶305(a).

The Herrings try to evade personal jurisdiction by arguing that Dominion alleges no defamatory statements that they *themselves* made. Mot. at 30–31. This misconstrues both the law of defamation and personal jurisdiction. Liability for defamation attaches to a defendant who directs or controls the publication of defamatory statements. *See Marsh v. Hollander*, 339 F. Supp. 2d 1, n.8 (D.D.C. 2004) ("[O]ne is liable for the publication of defamation by a third person whom as his servant, agent or otherwise he directs or procures to publish defamatory matter." (quoting Restatement (Second) of Torts § 577, cmt. f)). Dominion has plausibly alleged that Charles and Robert Herring each directed and controlled the defamatory statements OAN broadcast about Dominion. *See supra*. Directing and controlling the production and publication of defamatory statements in Washington, D.C. subjects the Herrings to this Court's jurisdiction.

The Herrings argue that the "corporate shield" doctrine prevents them from responsibility for defamatory statements broadcast by OAN. Mot. at 31. However, this doctrine "does not protect corporate agents who were not mere employees, but highranking officers responsible for the corporate policies that gave rise to the plaintiff's claims." *IMAPizza*, 334 F. Supp. 3d at 112; *Nat'l Cmty. Reinv. Coal. v. NovaStar Fin., Inc.*, 604 F. Supp. 2d 26, 30–31 (D.D.C. 2009). The Herrings are precisely such high-ranking officers: Robert Herring "is the network . . . he is in control of absolutely everything he wants to be," and is responsible for, among other things, "supervising and exercising editorial control" over OAN's D.C.-produced broadcasts and supervising and directing OAN's D.C.-based staff. Compl. ¶¶18–19, 44. And Charles Herring exercised close

oversight and editorial supervision over work done at OAN's D.C. bureau; exercised—jointly with Robert—total control over the stories broadcast regarding Dominion; and negotiated company-level D.C.-specific deals such as the partnership with *The Washington Times*. *Id*. ¶¶19–20.

Defendants' citation to *Wiggins v. Equifax Inc.*, 853 F. Supp. 500, 503 (D.D.C. 1994), does not support allowing the Herrings to avoid personal jurisdiction in this Court. First, the proposition for which Defendants cite *Wiggins*—that "Personal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity"—was rejected by the D.C. Circuit in *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 45–46 (D.C. Cir. 2020). Furthermore, in *Wiggins*, the court in that case found it lacked personal jurisdiction over defendants who were "merely employees of a company that has contacts with the District." 853 F. Supp. at 503. Dominion has pleaded that Charles and Robert Herring are not "merely employees" of OAN; they are the "highranking officers responsible for" OAN's defamatory broadcasts. The Herrings cannot escape liability for the defamatory statements they directed and controlled by hiding behind the camera—or behind the doors of their executive offices.

Finally, OAN and the Herrings contest personal jurisdiction on the basis that "Dominion's actual claims relate not to Defendants' alleged activities in this District, but rather to Defendants' nationwide activities ***on broadcast television and online*** that reached millions." Mot. at 30 (emphasis added). Neither "broadcast television" nor "online" constitutes a judicial district that could exercise personal jurisdiction over Defendants.[12] Thus, by Defendants' reasoning, ***no*** Court properly has jurisdiction over Defendants for the defamatory broadcasts. This is not the law. OAN

---

[12] OAN quibbles it "broadcasts" from its satellite location, rather than from where it filmed and produced its defamatory pieces. Mot., n.9. By this logic, Dominion's claims arise in outer space.

42

produced and filmed its defamatory television segments in Washington, D.C., and the Herrings edited, directed, reviewed, and exercised complete control over the production of those D.C.-based segments. Compl. ¶¶17–20. This Court has personal jurisdiction over OAN and the Herrings.

### b. Jurisdiction is proper because OAN and the Herrings caused tortious injury in Washington, D.C. to Dominion by acts within this District.

OAN and the Herrings are subject to this Court's jurisdiction for the additional and independently sufficient reason that they caused tortious injury in Washington, D.C. by their acts within Washington, D.C. *See* D.C. Code § 13-423(a)(3). Defamatory statements cause injury where they are published, even if the injury extends beyond that jurisdiction. *E.g.*, *Howser v. Pearson*, 95 F. Supp. 936, 938 (D.D.C. 1951) ("Libel and slander take place where the defamatory statement is communicated"); *Lapointe v. Van Note*, No. 03-cv-2128, 2004 WL 3609346, at *6 (D.D.C. Nov. 9, 2004) ("An injury by libel occurs at the site of publication."); *Crane*, 894 F.2d at 457 ("[L]ibel occurs in the place where published, but the injuries that may flow from libel are not necessarily restricted to the place of publication.").

Defendants' defamatory statements—which were produced and published by OAN and controlled and directed by the Herrings—were published to influential policymakers (most notably, then-President Trump) in Washington, D.C., and Dominion alleges significant harm as a consequence. *See, e.g.*, Compl. ¶289 ("The elected officials who are Dominion's actual and potential customers have received emails, letters, and calls from their constituents demanding that they cease and avoid contracting with Dominion or using Dominion machines."). This Court has recognized Dominion's interest in maintaining its reputation amongst the policymakers residing in this District, noting that "Dominion—a voting machine provider—certainly has an interest in maintaining its reputation with the federal government and the state governments that might be influenced by federal employees." *Dominion I*, 2021 WL 3550974, at *15. And as described in

43

detail above, most of the acts by OAN and the Herrings that caused Dominion injury in the District were undertaken in the District. *See, e.g., supra*, pp. 22–23.

### c. Jurisdiction is proper because OAN and the Herrings caused tortious injury in Washington, D.C. to Dominion by acts outside this District, while engaging in a persistent course of conduct in this District.

This Court also has jurisdiction under D.C. Code §13-423(a)(4), which provides specific jurisdiction over a non-resident defendant whose tortious acts outside Washington, D.C. cause injury in the District if the defendant also "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from . . . services rendered in the District of Columbia." *Lewy S. Poverty L. Ctr., Inc.*, 723 F. Supp. 2d 116, 123 (D.D.C. 2010) (citation omitted). This test is easily met here. Even if they acted solely from California—or their satellite in outer space—this Court would still have personal jurisdiction over each defendant under the fourth prong of the long-arm statute. To satisfy Subsection (a)(4)'s requirement of a persistent course of conduct within the District, "a defendant's contacts need not be great," and they need not even be "related to the tortious act outside the forum that causes the injury." *Id.* at 124; *see Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927, 931 (D.C. Cir. 1981).

As explained, above, OAN and the Herrings regularly conduct business in this District through OAN's D.C. bureau. *Supra*, pp. 39–42. Their D.C.-based defamatory campaign and their business transactions in the District are more than sufficient to establish jurisdiction over them based on the injury they caused Dominion in this District. D.C. Code § 13-423(a)(4).

### 2. Jurisdiction comports with the Due Process Clause

The exercise of jurisdiction over OAN and the Herrings is proper under the Due Process Clause. As this Court has stated, "Section (a)(1)'s 'transacting any business' clause generally has been interpreted to be coextensive with the Constitution's due process requirements and thus to

44

merge into a single inquiry." *Dominion I*, 2021 WL 3550974, at *14 n.14 (citation omitted). This Court has personal jurisdiction over OAN and the Herrings for all of the reasons set forth above, and because Defendants purposefully availed themselves of numerous privileges in this District. *See Fisher v. Bander*, 519 A.2d 162, 164 (D.C. 1986).

> OAN holds itself out as having extensive connections to this District, stating:
>
> One America News Network reports daily from the White House and generally attends all briefings available to White House press. OAN has an assigned seat in the White House briefing room . . . . [OAN] provides daily live reporting from the White House using multiple reporters and staff videographers.

Ex. 6 at p. 1 (OAN *amicus* brief). OAN's contacts can be attributed to the Herrings in light of their role as "highranking officers" that directed and controlled the defamatory broadcasts, *IMAPizza, LLC*, 334 F. Supp. 3d at 112. Additionally, Dominion alleges that Charles Herring travelled to this District for work on OAN's broadcasts, and that both Herrings sent material to OAN's D.C. office. *See Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 274 (D.D.C. 2011) (communications, including "letters" and "e-mails" "into and from the District of Columbia unquestionably qualify as contacts for purposes of the Court's jurisdiction analysis.").[13]

## IV.    CONCLUSION

The Court should deny Defendants' Motion to Dismiss, Stay, or Transfer in its entirety.

Dated: December 22, 2021

Respectfully submitted,

*/s/ Stephen Shackelford, Jr.*

Justin A. Nelson (D.C. Bar No. 490347)        Thomas A. Clare, P.C. (D.C. Bar No. 461964)

---

[13] Defendants argue that Dominion "must plead **specific facts** providing a basis for personal jurisdiction." Mot. at 27 (citation omitted)). Dominion has done so. *See supra*. But even if they had not, Dominion is entitled at minimum to jurisdictional discovery as to OAN and the Herrings. *See Estate of Manook v. Research Triangle Inst., Int'l & Unity Res. Group, L.L.C.*, 693 F. Supp. 2d 4, 15 (D.D.C. 2010). Through discovery, Dominion could provide further evidence of the Herrings' travels to this District for OAN business and their direction of its production of defamatory broadcasts in this District. *See* Compl. ¶¶18–20.

SUSMAN GODFREY LLP
1000 Louisiana Street, #5100
Houston, Texas 77002
(713) 651-9366
jnelson@susmangodfrey.com

Stephen Shackelford, Jr. (D.C. Bar No. NY0443*)*
SUSMAN GODFREY LLP
1301 6th Avenue
New York, NY 10019
(212) 336-8330
sshackelford@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117)
Michael Gervais (*pro hac vice* pending)
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
dbrook@susmangodfrey.com
mgervais@susmangodfrey.com

Katherine Peaslee (admitted *pro hac vice*)
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA  98101
(206) 516-3880
kpeaslee@susmangodfrey.com

Megan L. Meier (D.C. Bar No. 985553)
Dustin A. Pusch (D.C. Bar No. 1015069)
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Telephone: (202) 628-7400
tom@clarelocke.com
megan@clarelocke.com
dustin@clarelocke.com

*Attorneys for Plaintiffs*

46

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of December 2021, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system.


                                                    */s/ Stephen Shackelford, Jr.*
                                                    Stephen Shackelford, Jr.